UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| NORRIS W. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-230-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MRS. L. WALKER, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' Motion to Dismiss based on the Plaintiff's failure to exhaust the Bureau of Prisons administrative remedy process prior to filing the instant action. [Record No. 33] For the reasons discussed below, the Motion will be granted.

BACKGROUND

On July 9, 2007, Norris W. Jackson, an individual in the custody of the Federal Bureau of Prisons ("BOP") and currently incarcerated at the BOP's Federal Correctional Institution, in Forrest City, Arkansas, submitted a *pro se* civil rights complaint. He asserted jurisdiction under 28 U.S.C. § 1332, 28 U.S.C. § 1331, and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). In his complaint [Record No. 8] and in a later amended pleading [Record No. 6], Jackson named as the Defendants a total of twelve persons, all located at the BOP's Federal Corrections Institution in Manchester, Kentucky ("FCI-

Manchester"). He complained of several separate incidents allegedly occurring during his incarceration at that institution.

Jackson claimed that the Defendants: (1) violated his civil rights under the United States Constitution, specifically the First, Fourth, Fifth, and Eighth Amendments and Article II, Section 2, Clause 1; (2) violated certain federal statutes, *i.e.*, 42 U.S.C. §§ 1985, 1986, and 1988; and (3) committed violations of Kentucky law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. For relief, he demanded declaratory, injunctive, and monetary damages.

After screening the initial documents, the Court summarized the Plaintiff's allegations as follows:

> Jackson's allegations begin with events which occurred at FCI-Manchester in January 2006. He alleges that Mrs. Walker, the Food Service Supervisor, gave him illegal contraband in the form of cigarettes and a lighter. When he purportedly rejected her sexual advances on January 30th, she asked for the items back, but he refused to return them. Jackson alleges that Walker then paid three inmates to assault him, and that he was assaulted on that day by the two inmate Defendants (Bennett and McIntyre) and a third prisoner. He claims to have been seriously injured during the assault.
>
> Jackson further alleges that Walker had a co-conspirator on that day, another Food Service employee, Defendant Collins. Collins allegedly could have prevented the assault but failed to do so. Instead, Jackson claims that Collins witnessed and helped end the altercation, but failed to make a proper report. Jackson claims that "Defendant Walker put a false e-mail report into the computer system . . . claiming that there was an incident in Food Service involving inmate[s], but that she did not know who was involved. . . ."
>
> On February 2, 2006, Jackson reported the assault to a Mr. Lamoree, who is not named a defendant in this action. Lamoree allegedly told Jackson about Walker's false report. According to Jackson, Lamorre also told him that he would put the information from Jackson in a memorandum on his computer in which he had been keeping a record of Mrs. Walker's conduct. Lamoree allegedly said that he

did not want to get involved for fear of retaliation by staff, but he did report the assault to the Food Service Administrator, Defendant De La Camera.

De La Camera is alleged to have violated the Plaintiff's rights by failing to report the actions of Walker and Collins. Jackson claims that, on May 25, 2006, in retaliation for his complaints about the January assault, two other Food Service employees (Defendants Phillips and Hilbard) created a paysheet showing falsely that the Plaintiff had not worked in May 2006. He further claims that they wrote a false report charging Jackson with stealing meat. De La Camera is alleged to have failed to properly report Phillips' and Hilbard's actions, and in June, after he learned that Plaintiff had actually worked in May, he delayed paying Jackson until July.

Jackson's allegations and exhibits then jump to the Fall of 2006. On October 10, 2006, Jackson wrote about the alleged assault and cover-up in a 12-page letter to an organization named the Butler Legal Group, in Washington, D.C. [Record No. 6, Ex. A, p.1] His letter was apparently forwarded to the Department of Justice, which, in turn, responded by letter suggesting to the Plaintiff that he contact the BOP and providing the BOP's Washington address. [Record No. 6, Ex. A, p. 13] Plaintiff does not allege that he followed-up on this suggestion. Instead, he complains that the BOP never contacted him.

Jackson's allegations and exhibits then move to 2007. In January, he wrote to Defendant Johnson, who responded that a review had been conducted and no evidence of an assault was found. Johnson's response further stated that "[i]f such an incident occurred, you had the option of going to another staff member and reporting the incident if you felt the staff member neglected to inform the appropriate staff." [Record No. 6, Ex. A, p. 15] Jackson alleges that he wrote to Johnson again on January 25, 2007, and to the warden, Defendant Grondolsky. [Record No. 6, Ex. A, p. 16-20]

In his letter to the warden, Jackson provides a handwritten account of the alleged assault and cover-up. [Record No. 6, Ex. A, p. 18-20] This letter is dated January 25, 2007, and is entitled "B.P. 9 - Administrative Remedy Complaint." However, this document was returned to Jackson due to his failure to adhere to administrative rules and to present his request/complaint on the proper B.P.- 9 form. [Record No. 6, Ex. A, p. 21] Jackson states that he resubmitted the complaint on the proper form on February 19, 2007, but never received a response. In contradiction, however, he also claims that on February 16, 2007, Defendant Hall refused to give him the proper BP-9 form. Further, Jackson contends that Hall admitted that the original May 2006 paysheet was a mistake,

-3-

but he refused to remove it from Jackson's file or to report the responsible persons.

On February 22, 2007, Jackson alleges that he made a telephone call to his family and asked them to contact a lawyer and the American Civil Liberties Union about the assault and cover-up. He contends that this call was intercepted by the BOP. As a result, Jackson was called into a prison office where another Defendant, Lieutenant Worthington, informed him that two days earlier, on February 20, 2007, a BOP investigation had been instituted. That officer took an affidavit from Jackson and allegedly told him that since the matter was under investigation, the warden would not be responding to the BP-9.

Worthington then placed Jackson in Administrative Detention on February 22, 2007, indicating that the reason for the placement was the "pending investigation of a violation of Bureau regulations." [Record No. 6, Ex. A, p. 22] Jackson contends that this reason was false. Instead, he claims that he was moved in retaliation for his being so vocal about the January assault and cover-up. Regardless, on March 19, 2007, Jackson was transferred from FCI-Manchester, purportedly because it was not a medical facility. He arrived at his current location (USP-Canaan) on March 27, 2007. On April 17, 2007, Jackson had his first meeting with staff at the new facility and allegedly learned it was not a medical facility and that the transfer was actually "because FCI Manchester wanted to get rid of me." Jackson says that he did not try to file anything administratively at USP-Canaan because

> [it] would be futile to attempt to exhaust administrative remedies for the retaliation claims because none of the retaliatory conduct occurred at my present facility, USP Canaan and the 20-day period for filing a complaint had already passed by the time I learned the real impetus behind the transfer. Consequently, there are no administrative remedies to exhaust regarding the retaliation claims.

[Record No. 6, p. 3]

. . .

The final Defendant named in this action is Mr. A. Ndife, an FCI-Manchester physician's assistant ("PA"). Jackson claims that Ndife did not properly treated him. He further asserts that the PA had been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that his conduct was in retaliation for Jackson's exercise of his First Amendment rights to complain about the assault. Jackson alleges that two months after the assault, in late March 2006,

>   he sought medical attention "for his continued aches, pain, suffering that resulted from the assault on his person on January 30, 2006." In April, Defendant Ndife requested an evaluation of Jackson's hernia, after which surgery was recommended. However, Jackson alleges that the surgery was not performed until September 2006. He also complains of other gaps in his medical care, especially a current delay of 5 months, in which he has been awaiting a referral to an outside cardiologist for heart stress tests.

[Record No. 8, p. 2-5.]

In the same Order, however, the Court found that Plaintiff had failed to establish total diversity of the parties for claims purportedly arising under the Court's 28 U.S.C. § 1332 jurisdiction; had failed to exhaust his administrative remedies with regard to his civil rights claims against the ten Bureau of Prisons Defendants; had failed to state a claim against the two Defendants who were inmates at the Manchester prison; and Kentucky's one-year statute of limitations would bar the state claims nonetheless. The Court dismissed the claims against the inmate Defendants with prejudice, and dismissed the claims against the BOP employees without prejudice for failure to exhaust available administrative remedies, the Court citing 28 U.S.C. § 1915(e), *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997), and *Woodford v. Ngo*, 126 S. Ct. 2378 (2006).

Subsequently, on August 27, 2007, Jackson filed a timely motion for reconsideration, claiming that the Court erred by dismissing the action against the BOP *sua sponte* for failure to exhaust administrative remedies. He relied, *inter alia*, on the Supreme Court's recent decision in *Jones v. Bock*, 127 S.Ct. 90 (2007), which held that exhaustion is an affirmative defense and cannot support a *sua sponte* dismissal unless failure to exhaust is clear on the face of the Complaint. This Court reconsidered the matter and found that complete dismissal of this action

was premature under *Bock*. Therefore, Plaintiff's Motion for Reconsideration was granted as to his claims against the BOP officials. Accordingly, the Court directed the issuance of summons for the ten BOP Defendants, while the rest of the original claims remained dismissed.[1] The BOP Defendants have now responded to Jackson's Complaint with the current motion to dismiss. [Record No. 33]

### ADMINISTRATIVE REMEDY PROGRAM

The Defendants base their motion to dismiss on Jackson's failure to exhaust the BOP's administrative remedy program. The Court, therefore, takes this opportunity to summarize the stages and requirements of that program, found at 28 C.F.R. §§ 542.10-.19 (1998). Title 28 of the Code of Federal Regulations,. § 542.13(a), requires that an inmate "shall first present an issue of concern informally to staff . . . before an inmate submits a Request for Administrative Remedy," thereby providing the BOP with an opportunity to correct the problem, before filing a request for an administrative remedy. "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." § 542.14.

The Warden has 20 days to respond to a BP-9. § 542.18. If the inmate is not satisfied with the Warden's response, he may appeal (BP-10 form) to the Regional Director, who has 30 days to respond. If the prisoner is not satisfied with the Regional Director's response, he may appeal (BP-11) to the Office of General Counsel, and that office has 40 days to respond. *See* §

---

[1] The Court's earlier opinions are reported by Westlaw: *Jackson v. Walker*, 2007 WL 2344938 (E.D. Ky. August 14, 2007), *amended on reconsideration in part*, *Jackson v. Walker*, 2007 WL 2702325 (Sept. 12, 2007), *amended in part*, *Jackson v. Walker*, 2007 WL 3145957 (October 25, 2007).

542.15 (a). Only one extension of 20-30 days, in writing, is permitted the agency. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of response to be a denial at that level." *Id*.

In addition to the usual procedures, the BOP administrative scheme also includes alternatives which are available to prisoners. One is the following variation, which can be used by a prisoner who believes his issue(s) could put him in danger at the prison:

> If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.

28 C.F.R. § 542.14(d)(1).

The Court now turns to the parties' positions as to the exhaustion issue.

### THE DEFENDANTS' MOTION TO DISMISS

The Defendants' motion begins with information about the Plaintiff, who was sentenced to 360 months imprisonment in 1995 and was incarcerated at the FCI-Manchester facility from April 14, 2005, to March 19, 2007. They also provide information about the BOP's administrative remedy program, as described above.

The Defendants agree with this Court's initial assessment that Jackson failed to exhaust the administrative remedies about any of the complained-of incidents, and they attach the supporting declaration of a Senior Attorney for the BOP, Kevin J. Walasinski, who attests to these facts and provides print-outs from BOP records as to Plaintiff's use of the administrative

process since his incarceration. Walasinski states that Plaintiff has pursued only three issues administratively. One of the administrative remedies (No. 442759) pertained to the facts alleged herein. The BOP's rejection of that remedy for Jackson's failure to comply with procedures was not resubmitted or appealed, so as to proceed through the process to exhaustion.

The Defendants also seek dismissal based on qualified immunity. They cite well-established case authority in support of their position and contend that the Plaintiff has failed to present a constitutional claim.

### Plaintiff's Response

Jackson insists in his response to the Defendants' motion that he "took every step concievable [sic], and known to me, to compel the Bureau of Prisons to address my assault complaint." He then recounts what he did to pursue the matter, and he attaches his own documentary exhibits. The assault at issue allegedly occurred on January 30, 2006. Jackson states that, after making complaints to various BOP staff members in the days just after the assault, no one would investigate or believe him. A cover-up allegedly began at that time. Plaintiff also contends that on February 7, 2006, he mailed a BP-10, marked "sensitive," to the Regional Director, and he presents what purports to be a copy of this document, which contains a description of the assault, the names of Walker and the other allegedly responsible parties, and states that he believes his life to be in danger. [Exhibit A]

Jackson further claims that he did not receive a response from the Regional Director. Therefore, the next month, he took an appeal to the next administrative level, the Office of General Counsel, and he provides a copy of the BP-11 which he claims to have written to that

office. [Ex. C] Plaintiff states that his submission of this form also received no response. He concludes that the BOP officials thereby committed "an act to cover-up the assault, and prevent a record of the assault from existing."

After receiving no response to his BP-11, Plaintiff alleges that he continued his claims at FCI-Manchester and also instituted alternative ways to pursue his complaint about the assault. He began a letter-writing campaign, and he attaches copies of a response from an attorney, his letter to the "Butler Legal Group," and the response of Department of Justice. The last letter, dated November 7, 2006, contains a suggestion that Plaintiff contact the BOP's national office and it provides that address to him.

One year after the alleged assault, Jackson received a BOP official's response to correspondence from him. The response states that:

> A review of your allegation was conducted and it was determined there is no evidence to support your allegation you were assaulted. If such an incident occurred, you had the option of going to another staff member and reporting the incident if you felt the staff member neglected to inform the appropriate staff.

[Ex. H, dated January 17, 2007] Jackson argues that the tardy investigation could not have been much of an investigation, since the official quoted above had not talked to the inmates even though he had supplied the affidavit of one allegedly involved in the assault. The third inmate, Warren Edwards, swears to having been recruited by Walker to join with inmates Bennett and McIntyre in assaulting the Plaintiff. He claims, however, that he decided to withdraw from the plan, leaving the other two to assault Jackson. [Ex. I]

Purportedly as a result of his alternative methods to obtain an investigation of the assault, in February of 2007, Plaintiff was informed that his complaint to Washington, D.C. "was sent down through every level [of the BOP] with orders to send the results back to Washington D.C." According to Jackson, this "shows that Plaintiff administrative remedy's werw [sic] exhausted." Shortly thereafter, Jackson was transferred to USP-Canaan. He claims that he was told that the transfer was to a better medical facility but asserts this statement was false. Jackson claims that the transfer was in retaliation for his continuing complaints about the assault. He claims, however, that he continued to suffer retaliation at the new institution. Finally, Jackson argues, since BOP personnel blocked his ability "to access and exhaust," they should be estopped from prevailing on a failure-to-exhaust ground.

<u>Reply</u>

The Defendants contend in their reply that nothing in Jackson's Response refutes or excuses his failure to properly exhaust the BOP administrative remedies. They point to the three administrative remedies which Jackson initiated and claim that they establish that the Plaintiff had access to the administrative remedy scheme "but simply chose to ignore it." They also distinguish a Third Circuit case relied upon by Jackson and urge that the Court grant their motion based on exhaustion of administrative remedies.

<u>DISCUSSION</u>

As the Court noted earlier, under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner-plaintiff must first have exhausted "such administrative remedies as are available." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that,

in addition to reducing the quantity and improving the quality of prisoner suits, the exhaustion requirement also serves to eliminate unwarranted federal court interference with the administration of prisons and seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.

Subsequently, the Court held that the statute requires not only exhaustion of the available administrative remedy process, but *proper* exhaustion of that administrative remedy process. *Woodford v. Ngo*, ____ U.S. ____, 126 S.Ct. 2378 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id*. at ____, 126 S.Ct. at 2386. In *Woodford*, the Court discussed the purposes of exhaustion as stated in its earlier opinions and stressed that the benefits of exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at ____, 126 S.Ct. at 2388.

Jackson is familiar with the BOP's administrative remedy procedures, as shown by his use of the ordinary BOP scheme three different times on three different matters and his alleged use of one of its variations with regard to the current assault claim (*i.e.*, he claims to have used the abbreviated administrative steps for submitting sensitive issues, as provided in Section 542.14(d)(1), when he submitted the attached BP-10 to the Regional Office and BP-11 to the Office of General Counsel). [Ex. A, C] Further, in the latter effort regarding the assault claim, when he did not receive a response from the Regional Office, Jackson knew the regulations well

enough to go to Section 542.18 the next month, so as to "consider the absence of a response to be a denial at that level" and proceed to the next level. 28 C.F.R. § 542.18.

In support of his claim that he exhausted the assault claim *via* the BOP administrative procedures for sensitive issues, Jackson offers his own words and what purport to be copies of his BP-10 and BP-11. However, these two documents are authored and dated by him. He does not offer any corroboration as to their contents or his alleged mailings, in the words of a third party or in any documentary proof. Further, he does not even point to the existence of any supplemental evidence which would be discoverable to prove his efforts.

In contrast, the moving Defendants have submitted a declaration and print-outs from BOP records showing that, from as far back as 1995 and as recently as October 29, 2007, Plaintiff has initiated a total of only three administrative remedies. Moreover, these records detail the topics and reasons the remedy was rejected. This includes: one in 1999 on the topic of "inappropriate behavior by staff" (Remedy No. 178979); one in 2005 to challenge a disciplinary hearing against him (No. 371980); and one on February 14, 2007, which relate to the present allegations but which was untimely as it was sent to the Regional Director more than a year after the assault (No. 442759).

Here, the BOP has shown – and the Plaintiff does not deny – that Jackson abandoned all three of the efforts recorded in the print-outs and thereby failed to pursue the proper BOP channels to reach the Office of General Counsel with regard to any of these claims. Similarly, with regard to the retaliation and cover-up claims occurring after the alleged 2006 assault, Jackson does not allege that he used any of the BOP's administrative remedy procedures or

refute the Defendants' records. Therefore, in essence, he has admitted non-exhaustion of these issues, and all of his federal claims except the assault will be dismissed accordingly.

The Court concludes that the Defendants have properly raised and supported the affirmative defense of non-exhaustion of any of Plaintiff's federal claims against them. Further, the Plaintiff has attempted to show exhaustion with regard to only one of his claims (the January 30, 2006, assault). However, the Plaintiff's response regarding that administrative effort is insufficient to proceed further. In short, as to all of the federal claims in Jackson's Complaint, the Court finds that the Plaintiff has failed to demonstrate that he exhausted the BOP administrative remedy process through the usual procedures or through the BOP's specialized procedures for sensitive matters.

With regard to the Plaintiff's alleged request for an administrative remedy governing sensitive matters, Section 542.14, *Initial Filing*, contains four subsections. The one in issue here provides:

> (1) Sensitive Issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14(d)(1) (2000). Jackson alleges knowledge and exhaustion of these procedures.

-13-

Under this regulation, when a prisoner chooses to use the sensitive issue method and thereby bypasses the local institution's stages, he is choosing a 2-step method rather than the usual 4-step method to bring the issue to the highest level of the BOP. The regulation explicitly requires the prisoner to mark the envelope with certain words, a matter which the Plaintiff does not address. It also requires that prisoner to demonstrate "the reason for not submitting the Request at the institution." Only if the prisoner carries that burden and the Regional Director agrees that "the issue is sensitive and the inmates' safety or well-being would be placed in danger," will the BP-10 be accepted and the issue be permitted to go to the BP-11 final stage.

Based upon the Plaintiff's own allegations, his BP-10 was not accepted. When a sensitive BP-10 is not accepted, the regulation provides notice to the prisoner that he "may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission." Section 542.14(d)(1).

Even knowing the terms of Section 542.14(d)(1), however, Jackson did not file a BP-9 about the assault when he failed to receive responses with regard to his alleged sensitive requests to the BOP offices outside the prison. Jackson's submissions and the Defendants' exhibits show that his first BP-9 about any matter alleged herein was submitted to the warden on February 12, 2007 – more than one year after the assault. Jackson fails to provide any reason for not submitting this earlier. He does not allege fear for his life or other reprisal at the hands of the warden or any other basis for not going to go to the warden with an earlier BP-9.

In summary, the Plaintiff simply did not go to the warden with a BP-9. Under *Ngo*, exhaustion of available administrative remedies must be in accordance with all of the provisions thereof. Use of a sensitive request for an administrative remedy must be as exact as any other. The BOP's sensitive procedures may not be supplemented with other efforts, including a letter-writing campaign. *See Abuhouran v. Morrison*, 2006 WL 2334748 (N.D. Ohio) (slip op.), *reconsideration denied*, 2006 WL 3834411 (N.D. Ohio 2006). Therefore, Jackson has failed to demonstrate exhausting that portion of the administrative remedies which he claims to have used, and he has thus failed to satisfy the statutory precondition to this suit.

In addition to his failure to follow the steps required for sensitive issues, Jackson attempts to use select parts of the administrative procedures at his convenience. Under the Plaintiff's facts, he used Section 542.18 to deem a non-response to his February 7, 2006, BP-10, a denial, and then used it again when he received no response to his BP-11. By stringing together two such denials, he attempts to come to this Court 40 days later and claim exhaustion. This is contrary to the letter of the regulation which is in the singular, talking of "a" response being considered "a" denial. *Id*. In *Ngo*, the Supreme Court has made it clear that 42 U.S.C. § 1997e(a) requires available administrative remedies to be completed properly, not in a self-designed hodgepodge of procedures taken from various parts of the regulations.

Moreover, Plaintiff's limited efforts not only prevent him from demonstrating exhaustion of the administrative remedies, they also rob the Court of a record. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). In addition to providing a record for the

court, the Third Circuit in *Lyons v. United States Marshals*, 840 F.2d 202 (3rd Cir. 1988), has pointed out other benefits which exhaustion yields:

> The exhaustion requirement promotes: (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

*Id.* at 205.

Jackson has also suggested that since "all levels of the BOP's administrative remedy process" had knowledge of the assault, the cover-up, and later retaliation and "sen[t] my complaint down the chain-of-command back to the prison," the matter has been exhausted nonetheless. However, this is not what *Ngo* requires. This would not constitute "proper" exhaustion, but would be a system dependent on the happenstance of whether a misdirected letter arrives on the desk of someone equipped to deal with it correctly in the first instance. Exhaustion requires more than a prisoner's writing a letter to a distant firm nine months after a complained-of event, and then waiting to see if it is forwarded to the correct person.

Having found that the Plaintiff failed to exhaust his available administrative remedies prior to filing this action for violations of his federal rights, the Court will grant the Defendants Motion to Dismiss and will dismiss Jackson's Constitutional and statutory claims against the ten moving BOP Defendants. This result not only flows from *Ngo*, but is consistent with the decisions of other courts when presented with the issue of whether a prisoner's complaint or request was properly exhausted administratively prior to filing suit. *See Bailey-El v. Federal Bureau of Prisons*, 246 Fed.Appx. 105, 107-08 (3rd Cir. 2007) (plaintiff had no excuse for

failing to follow the procedures for appeals); *Macias v. Zenk,* 495 F.3d 37, 44 (2nd Cir. 2007) (notice of a claim alone is not sufficient after *Woodford v. Ngo*, which permits suit only after "proper exhaustion" of the administrative system); *Peterson v. Smith*, 2007 WL 4258210 (S.D. Ga. 2007) (slip op.) (complaint dismissed for failure to properly exhaust, the district court rejecting the argument that the Defendants were sufficiently aware of his complaints because he sent them letters). *See also Masters v. Dewalt*, 2006 WL 3004019, *2 (E.D. Ky. 2006) (not selected for publication) ("the exhaustion requirement requires the prisoner to complete, not merely initiate, the grievance process prior to filing").

Of particular note is *Williams v. Pettiford,* 2007 WL 3119548, *8 -10 (D.S.C. 2007) (slip op.), where there was no issue that the sensitive grievance had been timely and properly sent. The Regional Office rejected the grievance, however, on the ground that the subject matter was not so sensitive as to warrant skipping the institutional initiation of a grievance. Therefore, the Plaintiff was required to go to the institutional level to use the BOP's regular 4-step process, but he did not do so. The district court accepted the magistrate judge's recommendation to dismiss the claims as unexhausted, citing, *inter alia*, *Thomas v. Woolum,* 337 F.3d 720, 726 (6th Cir.2003).

As to purported state claims against these Defendants, the Court has already found that Kentucky's one-year statute of limitations bars the state claims urged in the Plaintiff's original Complaint. To the extent that any state claims survive that time bar and the current Order, the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which the

court has original jurisdiction). Because the federal claims against these Defendants will be dismissed for the reasons discussed *supra*, then the pendent state claims against these Defendant will be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Gregory v. Hunt, et al.*, 24 F.3d 781 (6th Cir. 1994).

CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED** as follows:

(1) The Defendants' Motion to Dismiss [Record No. 33] is **GRANTED**;

(2) This action is **DISMISSED** from the Court's docket, and

(3) Judgment shall be entered this date in favor of the Defendants.

This 27th day of February, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge